The court will proceed to the second case of Rowlands v. UPS. Ms. Jansen. May it please the court, I'm Laurie Jansen, representing the appellant, Linda Rowlands, in her case against UPS. Ms. Rowlands has worked for UPS a long time. At the time of her termination, she was 57 or 58 years old. Her job was a QC clerk. The QC clerk for UPS handles damaged packages. If you order a case of wine, two bottles come broken. They have to be replaced. She was the only QC clerk in the entire facility, and the Fort Wayne facility where she worked at is fairly large. I think, I could be wrong, the defense counsel may know, I think they had around 140 drivers. She worked late afternoon and got off work around midnight or a little after. As I said, she was the only QC clerk. She did have assistance mostly from Joe Gropengeiser, who is the person who shows up throughout the whole case. Two issues on appeal. The first one is whether the district court improperly ruled that she waived her failure to accommodate claim because she didn't state in her pleading that, quote, the requests for accommodation were denied. There was kind of a little battle before we got up here over the charge that was attached to the pleading. And I argued Federal Rule of Civil Procedure 10C, the charge to Exhibit C attached to the complaint, was incorporated by reference to use for any purpose. It was actually incorporated and amended in in paragraph 3 of the complaint. That's the appendix 336 to 337. Federal Rule of Civil Procedure requires a short, plain statement showing that she was entitled to relief. We believe she satisfied that burden. We stated she suffered the loss of her job. She was, the respondent was motivated by complainant's disability and furthermore retaliated against the complainant by firing her. Complainant tried to engage in the protected conduct. Complainant tried to engage in the interactive process. Complainant contends her termination was discriminatory on account of her disability. Complainant also contends she was retaliated against for trying to engage in the interactive process, making requests for reasonable accommodations. And, Your Honors. She was terminated, at least according to the defendant, because she brought in this employee. If, if that, if that was the reason she was terminated, wouldn't that be enough regardless of the, the disability issues that you've raised? Wouldn't that alone be enough to justify termination? It could be, Your Honor. Yes. It, it could be. I believe, though, when you look at what happened to her, it's not, you're looking at it in a vacuum. You're not looking at all of the evidence. And I argued good faith belief. There was no real good faith belief in that claim. Plus, the defense, part of, part of the reason I'm here is the defense never moved for summary judgment on these two claims. If you look at the statement used against her. What, what did they move for summary judgment? They didn't move for summary judgment on either of these reasonable accommodation claims. The judge, however, granted it to them anyway. If you look at the statement by Joe Gropengeiser, you can see that Linda Rollins never threatened him. That's Appendix 326. He talks about the fact she had on her coat and she reached in the pocket as she's leaving work. She pulls out a little handheld taser. It says on December 19th, roughly about 9.45 p.m., Linda Rollins pulled out of her coat pocket, a black handheld taser. After zapping it a couple of times, she said, this is so if anyone wants to mess with me while looking at me from about 10 feet away. Then turned around and headed out of the building. I felt totally threatened and went to management immediately, exclamation mark. She didn't threaten him. She said, basically nobody should mess with me when I go to my car. Part of the evidence is the case is what UPS did to basically torture this woman to get her to quit. She had to park away from everyone, clear out in an unsafe lot. Her car had been broken into twice. She's the only person that was not permitted to move it up on her break time. They left her out there alone. They found vagrants sleeping in the vans and she's out there in the middle of the night because she had leg injuries. She had been injured repeatedly. They wanted her gone. You have to look at the Gropengeiser statement as his co-workers said, you have to look at it with common sense. They don't know good faith belief. Her union reps, Steve Worms was deposed. He called it, you view it with common sense. He goes, Steve Gropengeiser is a big guy. He's a 5'11 body builder. He's a bully. He's intimidating. He was fired once for fighting. This guy loves to throw a punch. It's impossible to believe this 5'3, 58-year-old woman with bad knees, wearing a knee brace, limping so much her co-workers are calling gimpy. It's impossible to believe he was threatened by her. We didn't just have his statement. We had a statement by another co-worker, one of the drivers. Her quote was, UPS believing this is at best laughable, at worst an outright lie. No UPS manager could have taken any statement written by Joe Gropengeiser claiming to be threatened by Rollins with a straight face. As pure comic relief, they're probably still laughing. These are co-workers that work with these people day in and day out. Joe Gropengeiser himself violated this zero tolerance policy. When Steve Harms, the union rep, went to him and said, Joe, I can't believe you did this to Linda. You write up this statement, you get her fired, and then you apply for her job. What did Joe Gropengeiser do? He threatened to beat up Steve Harms right in front of the manager Steve Liske. Did he get her write up? No. Did he get fired for violating zero tolerance? Uh-uh. But he didn't have a knee injury, a severe knee injury, a knee injury that actually required a replacement the year after Ms. Rollins was terminated. The question of whether the zero tolerance policy is really working is Williams versus Bristol-Myers Squibb. There's a sincere question over the application of that policy. Then you look at the weapons policy itself. I noticed downstairs when I came in here today, on the door of your building you have almost the same symbol that they had at UPS. It's a handgun with a line through it. That's what they had at UPS. Menifee testified, I thought weapons mean guns. We can't bring guns. We all carry knives. We carry mace. We carry pepper spray. Nobody ever said tasers aren't allowed. She goes, I had a taser in my purse too. And Steve Harms, the union rep, said it's unheard of, unheard of to fire someone for a first-time offense when the company has never given any directive that these aren't allowed. And still to this day has not said don't bring a taser here. And I said in my brief, as an analogy, if Linda had been in the lunchroom and held up a nail file that's sharp and metal, technically I guess they could have said, oh, that's a good thing. It's unbelievable. Good faith requires good faith. And I analogize this to Stalter v. Walmart where the employee was terminated for eating Doritos out of somebody's bag that was open on a table. Sometimes things just aren't believable. And when you look at the guy who reported her that then miraculously applies for her job, it's kind of not believable. And back to the first claim, Ms. Rowlands, when the judge said that the pleading was insufficient, that was odd too. UPS in 2014 filed a motion to dismiss. And they filed it to clarify the pleadings. And at that time, on June 13, 2014, in UPS's reply brief, they said, quote, the parties are in agreement that as to her January 2013 termination, she's only pursuing claims as to her disability and retaliation. That's Exhibit C attached to the complaint. They knew it was there. The court on the motion to dismiss said the attached EEOC charge alleges she suffered three injuries. Those injuries substantially have interfered with her ability to walk. She doesn't have to submit evidence to prove her case at this statement proceeding. She only has to allege facts that if accepted true state a plausible ADA claim. The facts asserted in the charges and incorporated by reference satisfy that burden. UPS, however, I believe forgot Exhibit C existed. Ms. Rowlands was deposed for two full days. And not one question came her way over Exhibit C. Not one. And as I said earlier, UPS didn't even file for summary judgment over any of the allegations in Exhibit C. That's why I'm here today. Sentences aren't read in a vacuum. Maybe this pleading isn't as succinct as it should be, but I think it covers what we need to cover. UPS cited Perkins v. Silverstein and said, Rule 10 isn't a license to plead by Exhibit. I would agree with that. In that case, it said they attached cartoons. They attached newspaper clippings. This is a far cry from that. And I will tell you in 22 years, every time I plead an employment case, I attach the EEOC charge and incorporated by reference. Did you draft the EEOC charge? I did not, Your Honor. Was it pro se? I didn't even work at my law firm. Was it pro se? No, I don't believe so. And I can tell from the filing someone from my law firm must have drafted it because I can tell that it was actually notarized by someone there. I did not draft it. The court raised the waiver argument of its own volition. And that was troubling, too, because when Linda was never questioned over these exhibits, this one especially, in two days, I had to draft a 37-paragraph affidavit to submit to the trial court. And it was all about her request for reasonable accommodation. UPS never filed a motion to strike even one paragraph of that paragraph affidavit. They didn't submit any affidavits to contradict it, to say, No, Linda didn't request any accommodations. She didn't ask to do the computer part of her data entry job to sit down more to rest her knee because it was swelling so badly. And they said, No, Linda, Joe gets to do that. She asked if she could answer the phones. No, Linda, you can't do that. Can I be trained to drive a forklift? No, Linda, you can't do that. Can I use the phone? No, Linda, that's for management. Interactive process is interactive process. They didn't even meet her halfway. They didn't interact at all. There is no evidence of that. Do you want to save some time for rebuttal? I do. Thank you, Your Honor. I'm going to stop right now. Thank you, Ms. Jansen. Mr. Hartstein? Thank you, Your Honor. May it please the court. This appeal begins and ends with the fact that the causes of action Ms. Rollins is appealing are not in her complaint and are not supported by any facts in her complaint. But the complaint attaches the EEOC charge. Are you saying that that's improper? That's not what I'd say, Your Honor. What I'd say is that 10C does allow for the incorporation of an exhibit into a complaint and separate causes of action that are pled. Wasn't that issue decided when the judge denied the motion to dismiss? It was not actually, Your Honor. The judge, we moved to dismiss the disability discrimination aspect of the case. We did not move to dismiss a claim we did not know about, which is a failure to accommodate claim. Now this court has found those to be different causes of action with different elements to them. And so you could not read from a disability discrimination claim in a complaint that an individual was also seeking an accommodation. Those two types of discrimination have different elements. She alleged in the EEOC charge that she had tried to engage in the interactive process. What's the interactive process meant to do? Generally, Your Honor, the interactive process is meant for the individual and the employer to engage with one another. But here Ms. Rollins To determine whether the employee can do the job with or without a reasonable accommodation. Your Honor, I would What else do you need? Well, Your Honor, I would note if we're going to skip over all the portions with relation to what I believe are the deficiencies in what we're pleading and the district court's finding that she didn't even allege. This isn't here on a motion to dismiss. This is here on a summary judgment motion. Absolutely, Your Honor. So then I'll move forward to there. And that's the merits of failure to accommodate claim. She submitted when she returned to work a release that indicated she had absolutely no restrictions whatsoever. There is no reason to believe that she had restrictions and UPS would have no reason to believe she had those restrictions given what her doctor's note said. She was able to perform the essential functions of her job. There's no evidence indicating that she wasn't performing the essential functions of her job or evidence that in some way, whatever issues she may have believed to have had, that those interfered with the essential functions of her job. And, you know, I can speak to specifically, right, this court has indicated in the Broomfield v. City of Chicago case, the ADA does not require an employer to accommodate disabilities that have no bearing on an employee's ability to perform the essential functions of their job. So whether or not she has any kind of limitations, and her doctor's note said she didn't, where they aren't interfering at all with the essential functions of her position, then there is no obligation to accommodate and there's no need. But she's saying she has a disability, correct? Do you disagree with that? I do disagree with it. I think that the district court also... She had a knee brace, she was elevating and icing her leg and claiming that she had the inability to walk, to lift and do all these things without some accommodation, and that's not a disability? I think the more important distinction relates to the need for the accommodation, which there isn't at a jury question. It's not, Your Honor, where an individual has, one, submitted that the record evidence is clear the individual had no restrictions, and two, where the individual restrictions that she mentions, she mentions that she needed a knee brace. Well, the record testimony, even her declaration, which once again wasn't submitted until summary judgment, indicates that she wore a knee brace, it says, that she wore a knee brace and that she would switch between a short, I'm sorry, a large and small brace. She also indicates, this is again in her declaration, that she had it, she wore an ice pack that would fit into that brace. So she was, if she needed that accommodation, she was apparently receiving it because she says she had it, and she was doing her job until she got fired for threatening her co-worker with a taser. So, you know... All right, let me stop you there. Isn't that really the nub of this case, that she was fired because of this taser incident, correct? Absolutely. And isn't that, doesn't that raise all kinds of contested facts? It doesn't, and this is why. The question for the District Court and here is, what are the undisputed facts with regard to that? And it's not a question of, okay, of what individuals who weren't witnesses to this action and the way they characterize Mr. Gropengeiser, it's what UPS could reasonably believe. And what they had is an individual filing a written statement telling them that someone had pointed a weapon at them, activated that weapon, and saying, this is so anyone, if anyone messes with me, the voice and tone, what have you, what he said is that he said he felt totally threatened, and UPS has the right to take that on as face value. We also have an admission, this is at the time of the investigation, right? UPS conducted an investigation into this complaint, and UPS, in that investigation, they took a written statement from him. He said he felt, quote, totally threatened. Ms. Rollins admitted to having a taser in the workplace. A third co-worker, who was not mentioned earlier, also submitted a written statement as part of the investigation. That individual indicated he had heard Ms. Rollins activate the taser in the workplace close in time to the period of time when she threatened Mr. Gropengeiser. So whether she threatened him or not is disputed, is it not? She says she didn't out the door to this dark parking lot, this remote parking lot, and basically had something that she thought she needed for protection. She also says other people carried these things. She also says other people carried other non-lethal type of protection, like pepper spray and mace and that sort of thing. Isn't that at least what we should put to a jury to decide whether or not, whether or not, one, the employer actually applied their no-weapon policy to this type of device, and two, whether or not she actually threatened this guy, or whether she was using it for her own self-protection? I'd like to address those in multiple parts. First, there's the having the weapon in the workplace. Ms. Rollins admits to that, and the undisputed evidence is that UPS had a policy. It prohibited the weapons, the weapons, weapons applied to tasers. Let's just stop there for a second. Where is that an undisputed fact? Ms. Rollins admits that she had a weapon in the workplace. Where is it undisputed that UPS applied their no-weapons policy to tasers? Oh, there was an affidavit submitted with our motion for summary judgment that clearly stated that UPS defined a taser as a weapon, and that Ms. Rollins' counsel took no depositions in the case to question that in any way. So there was no way for them to determine or question that determination stated firmly in the declaration. But there's also in the record that other people had similar devices, isn't there? Not as quite as was presented by counsel. There's one individual, Ms. Menefee, who general statements that people had knives and box cutters, which are used in a workplace full of boxes to open and close those boxes, and then generic statements that some unknown persons had mace with them. But there's no evidence, no evidence whatsoever that managers knew about that, that those individuals, that the decision makers in this case knew about that, that those individuals ever threatened a co-worker, that those individuals ever activated or used those weapons in the workplace. And I think that's a pretty significant distinction to be drawn. So briefly touching on the specifics of the complaint itself, noted it wasn't in there. The court and the district court analogized this case to the Hooper case. They read the complaint and Ms. Rollins' allegations about her accommodation into the complaint, but still found it insufficient. And Proctor Health, similarly, a plaintiff in the charge had allegations related to an This court found that the complaint did not mention a suggested accommodation by a doctor, which is also true here, or any purported need or request for an accommodation. Without such allegations, mere invocation of ADA discrimination and the inclusion of the word accommodation in the cited definition did not provide adequate notice. And then I'd note similarly in Anderson v. Donahoe, this court rejected a failure to accommodate claim where a plaintiff in the retaliation heading had noted there was a failure to accommodate. But again, it was under the accommodation heading, and this court found that there was not reasonable notice to the defendants that the individual was actually seeking a failure to accommodate claim. I'd also note the procedural history here just briefly, because she spoke regarding Ms. Rollins' deposition. Ms. Rollins was asked during her deposition, what are you complaining about in this lawsuit? She never mentioned an accommodation of any kind. Also, on the opportunity to rehabilitate her testimony, she was not redirected to talk about accommodation. With regard to the words accommodate and accommodation don't appear in the discovery requests or responses, including those submitted by information regarding this case. The plaintiff is represented as if we were acting as if we were the only ones acting as if there was no accommodation claim. She was acting as if there was no accommodation claim until summary judgment, because there wasn't one. It wasn't pled in her complaint. She didn't intend to proceed on one, and she only realized that- But you win on the retaliation claim. I mean, it's just really no genuine issue. Triable fact, they fired her because of the taser. Do you just prevail? Is there anything left to the accommodation claim? I don't believe that her accommodation claim should be successful for both the failure. I also, it might be moot for the fact that, in fact, she was terminated. There was no disability discrimination as to her termination. She was terminated because she threatened her co-worker with a taser, because UPS made an determination that she had done so, and that this court, as has been frequently cited, doesn't seek as a super personnel department. And so I think that from that perspective, it would be moot, but I would again note that I think she still, it's fair to note that she did not indicate having any restrictions of any kind at any point, and that's undisputed. She had to ice her leg, and on at least one occasion, she asked to use a lavatory without having to hike the stairs. They told her no. Sounds like management knew this lady was still hobbling around. Your opposing counsel said, you know, everybody called her Gimby. I would distinguish again between- If management of UPS, you know, was half bright, they saw this gal was flipping around. So again, a failure to accommodation claim is not based on an individual who is perceived as disabled, or regarded as disabled. 29 CFR 1630.204 is that no accommodation is required for someone who is regarded as disabled. Only individuals who are disabled, and then pairing that with Brumfeld, the individual needs to not be able to form an essential function. The ice, she received. But she also asked for the accommodation of having a shorter cord for her machine, whatever it was, and they wouldn't give it to her, and she ended up tripping over it because of her disability? I believe she indicated she tripped over it previously, but it didn't interfere with the performance- the cord length didn't interfere with the performance of the essential functions of her position. She was able to scan packages successfully until her termination, again, for threatening someone. She was doing her job. She was able to perform the functions of her job. You treat that threat as if it were an undisputed fact. Isn't it highly disputed? Whether or not the fact is disputed, I would say, is a secondary question to whether or not UPS was reasonable in relying on the statement of two other co-workers, the individual who was threatened, and a third party that she had a- But they're claiming that was pretext, so it doesn't echo to the jury? Isn't this a typical jury question? I would absolutely disagree, Your Honor, respectfully, and that UPS is reasonable in relying on these statements, especially with something so serious as a weapons policy, and that there isn't a way around that, and she hasn't, you know- Was there any kind of a disciplinary hearing or anything? What- I mean, was there a time when somebody in management sat down and said, look, ask this fellow exactly how this confrontation took place with the taser, and she had an opportunity to explain why she had the taser, why she discharged it several times? There was an investigation, and they submitted statements. The individual who was threatened submitted a statement saying he felt totally threatened. Ms. Rollins submitted a statement indicating that she- admitting she'd had a taser in the workplace. The third party submitted a statement- Well, she had to- How- It was their testimony about how many times she discharged it in his presence while facing him? I believe that he stated that she discharged it a single time, and a separate person had heard her discharge it a separate time that bolstered the notion that she, in fact, activated tasers at work, and that that was something she'd done in the past. I'd also note she, you know, had the opportunity to- It indicates or supports her position that she did it in order to protect herself as she was walking out this- to this remote lot at midnight. But it's only relevant if management knows, Your Honor, and there's no evidence that management knew about that. They knew about it when it was reported by someone, by an individual who she'd threatened, and thereafter they conducted their investigation, and thereafter they made their determination. I see I'm well past my time. I would ask that the Court affirm the District Court's ruling. Thank you, Sergeant. Ms. Jansen. Counsel, may I begin, please, by asking- Counsel, may I begin, please, by asking you the question I just asked, posing counsel. If you were to prevail on the accommodation claim, but not prevail on the retaliation claim, what is it that you would like to see done in order to prevent that from happening? Is there, for your client in this, she's- there's justification for discharging her, right? Everything turns on the retaliation claim, am I right? Correct. So the accommodation claim really becomes moot if they had a right to fire her? I think she would have no damages if they had a right to fire her, yes. So yes, I would agree, Your Honor, it would be moot. I do believe- Could I, if I may, one other- let me turn your attention to the retaliation claim. Okay. As long as the company has a good faith belief that she violated the weapons policy, isn't the game over? Even if she- her subjective intention really isn't very important, is it? If she turned around and faced her co-workers and discharged this thing once or twice, and the company decides that violates their policy, that's a good faith call. That's the end of it, right? It would be, Your Honor, if you disregard our evidence of co-workers who said that, yeah, it can't possibly be good faith belief. Yeah, but how can you use the co-workers who are not at the scene? How can their testimony be relevant? Their testimony is relevant. Only Mr. Harms and Ms. Rollins were there. I'm sorry, Mr. Gropengeiser and Ms. Rollins were there. But you don't have any evidence that on any other occasion a co-worker discharged a taser in the work site, and that facing other employees, and that management disregarded it. She was not treated unequally here, was she? But again, Your Honor, she was, and you have to look at the weapons policy. When they talk about, we let them carry pocket knives, but the testimony is they carried 8-inch buck knives. They carried- and the testimony is other people had tasers in their purses. They didn't know they were prohibited. That's the difference, though, isn't it? Other persons may have had them in their purses. They were concerned about traveling home, but she displayed it in the workplace, actually discharged it in the workplace. As she's walking out the door, she clicks it. She said, I carried it over 10 years. Is that the testimony, or is the testimony that she was facing her workers and she discharged it? She's 10 feet away with her coat on as she's leaving. She says, I have this. He said, she turned and walked out the door. She didn't point it at him, as the defense said. She just clicked it and said, this is so nobody messes with me. Out the door. Did she admit that she ever pointed it at him? No, no. Did she deny that she pointed it at him? Exactly. Her statement was, I've carried this for 10 or 15 years. I'm scared to walk out there alone at the middle of the night. But she discharged it. It's tiny. She puts a battery in it every night to turn it on. This is not like a police stun gun that shoots you with thousands of volts. I think it maybe would tickle you. It ran on a AA battery. Did she discharge it? I think she did to make sure the battery was in. She did it every night. Kenetha Melfi said, I can't believe they're complaining about this now. She didn't make a secret of it. She carried it for years. So your characterization of the testimony is that she was testing it? Absolutely. He didn't say, even in his statement, he doesn't say she pointed it at him. He said she held it up and clicked it, said this is so nobody messes with me, and turned around and walked out. Again, I get back to, is there a good faith belief there? Given his history, given her history, given when her union rep tried to get her back and said, no one's been fired over this. Nobody knows that you can't carry Taser. And her boss said, they've been on my butt constantly about her. I'm not bringing her back. Well, why? Is that in the record that he said that? Yes. Because of her knee. They didn't have any record that she wasn't doing her job. This was just a convenient way for them to get rid of a problem. What evidence is there in the summary judgment record that management knew other people were walking around the plant with Tasers in their purse or pocket? I don't believe they knew there were Tasers in purses. They knew people had pepper spray. They knew people had mace. They knew people had very large knives. Not pocket knives. The men would openly wear those on their sheets. They used those. Weapons was loosey-goosey. Did the policy of the company at any place in writing define what a weapon was? No. Absolutely not. It just says weapons are prohibited. And they displayed, as you do, a handgun with a line through it. Kenneth Cannell said, I worked there for years. I thought weapons were guns. Is there any, there's no evidence then that they knew people had Tasers in the workplace?  Not that I'm aware. Thank you, Your Honor. I'm way out of time. That's fine. Thank you, Jensen. Thank you, Hartson. The case is taken under advisement.